Hurlin DELPIT, Appellant,

v.

NOCUBA SHIPPING COMPANY et al., Appellees.

No. 19336.

United States Court of Appeals Fifth Circuit.

May 2, 1962.

Rehearing Denied June 15, 1962.

Nicholas Masters, Felicien P. Lozes, New Orleans, La., for appellant.

Daniel A. McGovern, III, Clem H. Sehrt, Edward S. Bagley, New Orleans, La., for appellees.

Before HUTCHESON, WISDOM and BELL, Circuit Judges.

WISDOM, Circuit Judge.

Hurlin Delpit was injured while operating a tractorvator unloading a cargo of sugar from the SS. Ensco Cuba. He sued the operators and managers of the vessel[1] on the ground that his injury was caused by unseaworthy conditions. He lost his case before the jury.[2] On appeal he argues that the facts and logic of the situation compel us to accept his explanation of the accident and that we should grant judgment in his favor, or at least order a new trial because of alleged errors in the proceedings below. We hold that this case turns on questions of conflicts in the evidence and matters of credibility. On these questions there are no adequate reasons for setting aside the jury verdict.

Delpit was working in the lower hold of the ship at the time of the accident. The hold was filled with bulk Cuban raw sugar, which was being removed through the number 3 hatch by a floating crane. Delpit's job was to push the sugar from the area beneath the number 4 hatch and between the two hatches over to the number 3 hatch where it could be reached by the crane. When he first started working, the sugar was packed to within a few inches of the underside of the 'tween deck, making it necessary for him to use his machine to cut a tunnel from the number 4 hold to the number 3 hold. After that, his job was to broaden the tunnel until it reached the sides of the ship and then work downwards.

Delpit was working a night shift. The accident occurred between one and two o'clock in the morning. His version is that the crane had dug too deep a hole in the packed sugar in the number 3 hold and that inadequate lighting and poor ventilation of the fumes given off by his tractor so obscured his vision that he could not see fully the depth of the excavation; when he pushed a load of sugar over to the hole for removal by the crane, the sugar beneath his tractor caved in; he threw the tractorvator into

1. The defendants impleaded T. Smith & Son, Inc. and Andrew S. Jaeger, Jr., d/b/a Jaeger Dozer Service, together with the latter's liability insurer, the Employers Liability Assurance Corporation, Ltd., on the ground that these third-party defendants had undertaken responsibility for performing the unloading operation and furnishing adequate supervision of it.

2. The trial judge submitted the case to the jury for a special verdict with interrogatories. The first interrogatory asked whether they found that the accident was caused solely by the negligence of the plaintiff. The jury answered "yes" to this question and, according to their instructions, did not answer the other questions.

reverse to escape being hurtled into the hole and it crashed him up against the coaming of the 'tween deck injurying his back. The defendants assert that the hole in the sugar beneath the number 3 hatch was not too deep for his safety, that visibility was sufficient, and that the injury resulted from the plaintiff's failure to use due care, either in getting too close to the hole or in failing to duck when the tractorvator passed under the 'tween deck's supporting beams.

The controversy in this case centers on the factual dispute as to the exact circumstances attending and causing the accident. None of the witnesses actually saw the accident occur except the plaintiff. Four other workers and two supervisors gave testimony, and the testimony is in conflict on almost every point. The plaintiff seems to have relied principally on his assertion of inadequate lighting. He stated that there was one light in the number 4 hatch with about a sixty-watt bulb and one light in the number 3 hatch with about a seventy-five-watt bulb, and that the light was very dim. One of the plaintiff's witnesses said that there were two lights in the number 3 hatch and that each light consisted of a cluster of four or five bulbs; he said the light was "pretty good", but that the crane had knocked out one of the lights in the number 3 hatch. The plaintiff's other witnesses testified that the lighting was poor. Wesley Wilson said it was "real dim"; Brooks Williams said it was "just like fog"; and Willie Hill stated that it "was very dark down there. I mean they didn't have hardly no light at all." John Heisler, the night superintendent, testified that he believed there were four lights in the number 4 hold and two in number 3. Sidney White, the stevedoring foreman, put it at three in the number 4 hatch and two in the number 3 hatch; he stated also that each light consisted of a cluster of six bulbs. White stated that the ship had adequate light facilities to keep anyone from getting hurt and that if any of the men had found the light inadequate he would have come to White for more light. Delpit stated that he had complained to White that the light was very dim and that White promised to get additional lights. Willie Hill started to testify that he had heard that Delpit had complained about the lighting. When directed to testify only as to what he knew of his own knowledge, he stated that he overheard White asking for more lights from one of the ship's regular officers. White flatly denied that he had received any complaints about the lighting from Delpit or anyone else.

There was a similar dispute as to ventilation. It appears that the number 3 hatch was entirely uncovered and that the number 4 hatch was only partly uncovered. The witnesses never agreed as to the extent to which the latter hatch remained covered. They differed also on the amount of fumes in the hold. The plaintiff's witnesses stated that the tractorvator gave off heavy fumes and these collected in the hold. The defendants' witnesses said that the fumes given off were not heavy and that the ventilation was proper.

The workings of the crane raise another question mark. Delpit stated that the hole dug in the number 3 hold was about eight feet deep, and that the crane had dug the hole just before his accident. He said that in making the hole the crane had taken six cuts, which he had seen the crane do because he was standing on the deck watching it. But then he testified that he was pushing sugar into the hole while the crane was digging. Wesley Wilson and Willie Hill both testified that when the accident occurred the crane had been moved down to the number 1 or 2 hatch. This testimony creates some uncertainty as to the depth of the hole and as to whether Delpit should have known of its allegedly perilous depth when operating his tractorvator.

The location of the accident is the final major point of controversy. It appears agreed upon that Delpit was backing up when the accident occurred and that when help came to the rescue the front of the tractor was depressed and its back raised, pinning Delpit against the beams

or coaming and with the engine running in reverse. Delpit testified that his tractor was at the edge of the hole when the sugar gave way, that he backed up only about a foot before striking the coaming of the number 3 hatch. Sidney White stated in contrast, however, that there was no indication that the sugar had given way and that Delpit had been found pinned against the coaming of the number 4 hatch. Wesley Wilson and Brooks Williams both stated that when they found Delpit he was close to the number 4 hatch, and Fred Wilson's testimony suggests that this was the case though it is not clear on this point. Willie Hill stated that the front end of the tractor had sunk down because the sugar had rolled forward into the hole dug by the crane.

In addition to the conflicts between the testimony of the different witnesses on these points the testimony of several witnesses was internally inconsistent on certain details. The most striking instance of this was Brooks Williams's statement that he had actually seen the accident happen, followed a few minutes later by his acknowledgment that when he got there Delpit was already pinned against the beam.

 This summary of the testimony demonstrates that it was the task of the jury to resolve disputed factual questions on the basis of their judgment as to the accuracy and honesty of conflicting testimony. The fact that the plaintiff was the only person on the scene at the time of the accident does not require the jury to accept his version of the events; they are entitled to rely instead on circumstantial evidence and on inferences reasonably drawn from the circumstances. Certainly the evidence here would support more than one interpretation of what probably happened in the lower hold of the SS. Ensco Cuba. The decision in such a case lies within the rightful province of the jury. We may not second-guess jurors or substitute our judgment for theirs when theirs is supported by sufficient evidence. The jury would have been justified here in concluding that the accident was caused by the unsafe working conditions. The jury would also, however, have been justified in concluding, as it did, that the working conditions were reasonably safe and that the accident must have resulted from the plaintiff's failure to use proper care in performing inherently dangerous work. The evidence in this case is not so overwhelming that we would be justified in disturbing the jury verdict.

 The appellant has raised several objections to the trial proceedings. None of these has any real merit. He argues that it was improper for the trial judge to submit a special interrogatory to the jury asking whether the accident was caused solely by the plaintiff's negligence, since it implied that the plaintiff had been negligent. Taking the question out of context, this contention is persuasive, but it loses force when the question is read in conjunction with the rest of the charge. The very next interrogatory asks the jury whether the accident was caused by the unseaworthy condition of the vessel. These two questions presented the case to the jury in a form that did not give an advantage to either side. Since the defendant by its answer, evidence, and argument had asserted that the accident was caused by the plaintiff's negligence, this question was fairly in the case; and the defendant introduced sufficient support for its contention to be entitled to a jury verdict on its merits. Reading the instructions as a whole, it is clear that the trial judge properly explained to the jury that the alleged negligence of the plaintiff was important not as a matter of contributory negligence but as the sole cause (or not the sole cause) of the accident. Under Rule 49(b), F.R.Civ.P., 28 U.S.C.A., the trial judge may employ special interrogatories. We find no basis for criticism of his decision to do so in this case.

 The plaintiff. contends that it was improper for the trial judge to allow cross-examination of his witnesses by the third-party defendants who had no material interest in the case. This contention overlooks the obvious likelihood

that if the plaintiff had prevailed before the jury, the ultimate liability would have fallen on the third-party defendants. He alleges error in permitting cross-examination of the plaintiff concerning his former common-law wife and his children by her. Although this testimony may perhaps have had a slightly prejudicial influence, it was properly admitted in an attempt to show an inconsistency with a prior declaration by the plaintiff and thereby impeach his credibility. We have considered all of the other objections and have found them without merit.

The judgment is

Affirmed.

JOSEPH C. HUTCHESON, Jr., Circuit Judge (dissenting).

Sometimes a case comes up on appeal to this court where the record as a whole creates a strong impression that a miscarriage of justice has occurred which cries out for relief. This is such a case, and, with deference to my associates, I must dissent from the affirmance and give my reasons for dissenting.

It is true that the jury did find against plaintiff on the special issues submitted. However, plaintiff-appellant insists: (1) that the Issue No. 1 on which the jury found against him, that his negligence was the sole proximate cause of the injury, is without support in the evidence; (2) that his motion for a directed verdict on the ground that the evidence established unseaworthiness as matter of law should have been granted; and (3) that there were procedural errors in the charge and in the admission of inflammatory evidence as to his marital irregularities which were completely irrelevant to the issue; and finally he insists that if there was evidence sufficient to take the case to the jury, it was error to deny his motion for new trial on the ground of the insufficiency of the evidence.

I am of the opinion that there was reversible error in the admission of the evidence complained of. I am, also, of the opinion that, under the undisputed facts showing that the place where, and the circumstances under which, plaintiff was working were inherently dangerous, and the vessel was, as to that portion of it, therefore, unseaworthy as matter of law, it was error to instruct the jury that the plaintiff assumed risks arising from such unseaworthiness. It is interesting to note that the thrust of the defense and its insistence that the plaintiff was guilty of contributory negligence rests on the undisputed facts to which everybody testified, that plaintiff, in the doing of his work, was obliged to be constantly on the alert for overhead beams and that his safety at all times depended upon his being quick enough to make the proper ducking motion at the proper time. The only claim that plaintiff was guilty of contributory negligence was the claim that he was not sufficiently alert at all times to duck so as to escape contact with the overhead beams. No one saw him when he was hurt, and plaintiff testified that he was very careful to duck.

The defense then comes down on the evidence to a conclusion that, because he was caught and pressed between the beam and the tractorvator, he must have failed to duck. To my mind this theory will not hold legal water. If the case was such as the witnesses all testified to, that he was driving the tractorvator in a situation of danger in a crowded space where injury was inevitable unless he made the right movements at the right time to avoid the danger, there was unseaworthiness as matter of law and plaintiff could not be charged with having assumed the risk of and from such unseaworthiness. This being so, the district judge erred in denying plaintiff's motion to direct a verdict, and he also erred in submitting to the jury the issue No. 1 on which the jury found against him that his negligence was the sole proximate cause of the injury. In addition, if it might be claimed that there was evidence to take to the jury the question of unseaworthiness and that it was not error to refuse the directed verdict, it is quite clear that on the record as a whole the verdict could not stand against the mo-

tion for new trial for want of sufficiency of the evidence.

Of the opinion, therefore, that the verdict and judgment may not stand, I respectfully dissent from their affirmance.